[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this medical malpractice action, the defendant Mary Ita Malone, M.D., has moved for summary judgment on the ground that there was, at the time of the alleged negligence, no physician-patient relationship between the plaintiff and herself and, therefore, the element of duty is lacking. The defendant has submitted an affidavit, medical records and transcripts of deposition testimony in support of her motion.
The revised complaint with a caption date of July 21, 1998, is apparently the operative pleading. The plaintiff alleges that she was involved in an automobile accident, in which she suffered a cervical spinal cord injury, on November 5, 1994. She was admitted to the defendant St. Francis Hospital at that time; she alleges that the defendant Malone was the attending physician on admittance. On November 13, 1994, while still an inpatient, she was injured in the course of transfer from a toilet and, as a result, required a cervical fusion and the attendant damages. She claims in the first count that the additional injuries were caused by the negligence of defendant" in that there was a failure to train the nurse's aide who attempted the transfer, a failure to supervise CT Page 14901 proper movement, and the movement was performed improperly. She claims in the second count that the defendants "undertook to provide her care" and that, in the course of her stay at St. Francis, her rigid collar was placed backward by personnel and received damages as a result. She alleges negligence in the failure to provide necessary diagnostic tests, the failure to detect true conditions, failure to place the plaintiff in more rigid restraints, failure to place the Philadelphia collar properly and "any other acts of negligence to be proven at trial."
The defendant Malone has presented documentary evidence showing the following. On November 5, 1994, she was "contracted" to be the director of the rehabilitation unit at St. Francis. She was not the attending physician at the time the plaintiff was admitted to St. Francis. Her first contact with the plaintiff was on November 9, 1994, at which time she confirmed central cord syndrome" and recommended that she be admitted to the rehabilitation unit upon discharge from St. Francis. On November 14, during a "non-diagnostic round", she confirmed Ms. Thompson's anticipated admission to the rehabilitation unit. On November 16, 1994, the plaintiff was transferred from St. Francis to the rehabilitation unit, at which point the plaintiff was her attending physician. The rehabilitation unit is physically and apparently administratively separate and distinct from St. Francis Hospital.
Hospital records confirm this chronology. Dr. Malone signed and apparently wrote a consultation report on November 9, 1994. According to the report, Dr. Malone seems to have examined the patient and her chart. She noted pertinent findings and concluded that she had cervical cord syndrome and needed intensive rehabilitation prior to discharge to home. She wanted to arrange admission to an acute rehabilitation unit as soon as the patient was ready. A nursing note confirms that on November 14, 1994, Dr. Malone saw the plaintiff on rounds and cleared her for admission to the rehabilitation unit "if cleared by neurosurgery." These two events are the sum of the contacts which Dr. Malone had with the patient. There is no claim of any negligence in the care of Ms. Thompson after her admission to the rehabilitation unit.
The defendant Dr. Malone has moved for summary judgment in her favor, on the ground that there was no physician-patient relationship such to trigger a duty to conform treatment to any particular standard of care. In opposition to the motion, the plaintiff does not disagree with the factual scenario presented by the defendant, but argues that the consultation role was sufficient to create at least a genuine issue of fact as to the existence of a duty to exercise a professional standard of care.
Summary judgment should be granted "if the pleadings, affidavits and CT Page 14902 any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the result. Barrett v. SouthernConnecticut Gas Company, 172 Conn. 362, 378 (1977). The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v.Lumberman's Mutual Casualty Company, 214 Conn. 573, 578 (1990). If the moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. It is not enough to state in conclusory fashion that an issue exists. Dailyv. New Britain Machine Company, 200 Conn. 562, 568 (1986). The motion should be granted if a verdict would be directed on the same evidence.Batick v. Seymour, 186 Conn. 632, 647 (1984).
There are four essential elements to a malpractice action. They are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury. Labieniec v. Baker, 11 Conn. App. 199, 202-03 (1987). The defendant claims that the first element, duty to the patient, is missing in the circumstances of this case.
Duty has been defined as follows:
 "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) RK Constructors, Inc. v. Fusco Corp., supra, 231 Conn. 385. Because foreseeability is a necessary component of duty, the absence of foreseeability forecloses the existence of a duty of care. Id., 385-86; Frankovitch v. Burton, supra, 185 Conn. 20-21. The converse is not, however, true: the conclusion that a particular injury to a particular plaintiff or class of plaintiff's possibly is foreseeable does not, in itself, create a duty of care. As we recently stated in RK Constructors, Inc. v. Fusco Corp., supra, 386: "Many harms are quite literally `foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in CT Page 14903 itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Citations omitted; internal quotation marks omitted.) Thus, foreseeability is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care.
Waters v. Autuori, 236 Conn. 820, 827-28 (1996).
The notion of duty serves to limit the circle of those to whom a physician may be liable, and the scope has been limited to those within the physician-patient relationship. See, e.g., Pokorny v. Shafer, CV 93 0528375 (Wagner, J.) (1993), in which it was held that any negligence in the course of an independent medical examination cannot result in medical malpractice, and the only duty is not to harm the patient in the course of the examination. Similar authority submitted by the defendant Malone provides examples of other situations in which there was no physician-patient relationship. There does not appear to be any specific authority in this jurisdiction, however, regarding the existence or non-existence of the duty in the context of the consulting physician.
Some guidance may be found in cases concerning informed consent. The concept of duty has served to limit the potential number of classes of people who may maintain such an action. In Petriello v. Kalman,215 Conn. 377 (1990), for example, the Supreme Court held that only the physician performing a particular procedure has the duty to obtain informed consent; the hospital could not be liable for breaching a duty to obtain informed consent. Similarly, in Daley v. Sava, CV92 0121524,1995 Ct. Sup. 5464 (Lewis, J.) (1996), Judge Lewis held that a consulting physician did not have a duty to inform the patient of the risks of a procedure. In so holding, however, he added an important caveat:
 While Yale may have had a duty to inform, it had no duty to obtain informed consent as it was not involved in the actual surgical procedure performed on the plaintiff. The plaintiffs may be able to assert a cause of action in negligence against Yale, as in count four, based on the quality of the information it provided to the plaintiff, but this does not support CT Page 14904 an action in negligence based upon a theory of informed consent.
In a close case, it seems to me that the better course is to require expert testimony on the issue of the existence of the duty, as has been the practice in close cases regarding informed consent. The first count, however, does not seem to present a close case. The count alleges negligence in moving the plaintiff and in training the aide who moved her. The defendant Malone, in at most a consulting capacity, had seen the plaintiff four or five days before the incident and had recommended transfer to the rehab unit. She had nothing to do with the day to day care, and she was not the plaintiff's personal physician. She performed no procedures and gave no treatment at that time. It is quite clear that no duty existed other than a duty to do no harm: if Dr. Malone had a duty of care in that instance, so would any doctor who had seen her in the hospital. Summary judgment is granted as to count one.
The second count presents a somewhat closer question as to the outer frontiers of a physician's duty. This count alleges that further procedures should have been carried out so that the patient's condition would be more clearly known, that the wrong stabilizing device was used and that a collar had been placed backwards. An analysis of Dr. Malone's role, however, again shows that of course she was not a treating physician and did not diagnose or otherwise care for the patient at the time; rather, she simply made a recommendation for future care in the rehabilitation unit. The plaintiff argues that Dr. Malone's visit on November 9 was an opportunity for corrective action which could have resulted in the plaintiffs not being harmed later. While this may be true, the mere presence of any medical provider may provide such an opportunity, but it does not mean that every medical provider has a duty of care which is enforceable in an-action for professional negligence.
The concept of duty, in short, narrows the field of potential defendants to those with some kind of physician-patient relationship. Perhaps language in Blanchette v. Barrett, 229 Conn. 256, 278 (1994), is instructive:
 The determination of whether the physician-patient relationship has terminated depends upon several factors. These factors include the subjective views of the parties as to whether their relationship had terminated; the length of their relationship; the frequency of their interactions; the nature of the physician's practice; whether the physician had prescribed a course of treatment for or was monitoring the condition of the patient; whether the patient was CT Page 14905 relying upon the opinion and advice of the physician with regard to a particular injury, illness or medical condition; and whether the patient had begun to consult with another physician concerning the same injury, illness or medical condition. See Adams v. Luros, 406 N.E.2d 1199, 1203 (Ind.App. 1980) (using similar multifactor test to determine termination of physician-patient relationship); 1 D. Louisell H. Williams, supra, 13.02 (requiring either recovery of patient from illness, injury or condition being treated; authorized transfer or referral of patient to another physician; or express or implied discharge of physician by patient to terminate relationship).
Although the issue in Blanchette was whether a physician-patient relationship had terminated for purposes of the statute of limitations, the considerations may be relevant to whether a physician-patient relationship exists in the first instance. of the considerations listed in Blanchette, none favor the plaintiff. The deposition transcript indicates that the plaintiff barely knew Dr. Malone; she had seen her once, apparently, prior to the incident; she had other physicians on whom she relied; and neither she nor Dr. Malone appeared to think there was such a relationship.
Summary judgment may enter in favor of the defendant Malone as to both counts.
Beach, J.